**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

RIVERA-OLIVERA, *et al.*,

**Plaintiffs,**

**v.**                                         **Civil No.** 10-2040 (FAB)

ANTARES OIL SERVICES, LLC, *et al.*,

**Defendants.**

**OPINION AND ORDER**[1]

BESOSA, District Judge

Before the Court are defendants Repsol Petroleo, S.A. ("RPSA") and Repsol YPF Trading y Transporte, S.A.'s ("RYTTSA") motions to dismiss for lack of personal jurisdiction and failure to state a claim upon which relief can be granted.  (Docket No. 99; Docket

---

[1] Lindsay Britton, a third-year law student at the University of New Hampshire School of Law, assisted in the preparation of this Opinion and Order.

No. 100.)  For the reasons discussed below, the Court **GRANTS** the motions as to RPSA and RYTTSA.[2]

## I.   BACKGROUND

### A.   Factual History

At about 12:30 a.m. on October 23, 2009, multiple fuel storage tanks exploded at the Gulf Oil Facility in Bayamon, Puerto Rico.  (Docket No. 1 at p. 2.)  As the M/T Cape Bruny unloaded its cargo of unleaded gasoline at the Facility, it overfilled the storage tanks, allowing the gasoline to spread and find an ignition source.  Id.  The explosion and subsequent fire created a large plume of smoke and spread hazardous materials over Bayamon, San Juan, and other neighboring municipalities.  Id. at p. 3.  The explosion registered on the Richter scale.  Id. at p. 8.

Repsol Petroleo, S.A. ("RPSA") is a Spanish sociedad anonima, "akin to a corporation," with its headquarters and

---

[2] Intertek joined RYTTSA's motion to dismiss for failure to state a claim and argued that "RYTTSA's Motion to Dismiss is more than adequate to demonstrate that the causes of action against Intertek, USA, Inc. should also be dismissed." (Docket No. 101 at p. 2.) The Court initially granted the joinder. (Docket No. 102.) Plaintiffs have alleged separate facts that only apply to Intertek, however, and Intertek and RYTTSA are mentioned in separate causes of action in the complaint. (Docket No. 1 at pp. 6, 16–20; Docket No. 139 at pp. 25–32.) The bankruptcy court partially lifted the stay in response to the stipulation between the debtors, RPSA, and RYTTSA. (Docket No. 178-1 at pp. 1–2.) The partial lift of the stay does not apply to Intertek. Therefore, the Court **SETS ASIDE** Intertek's joinder of RYTTSA's motion to dismiss and will not rule on any arguments Intertek sought to make regarding failure to state a claim unless and until the stay is lifted and Intertek files its own motion.

principal place of business in Madrid, Spain. (Docket No. 99-1 at p. 1.) Repsol YPF, S.A. owns 99.97% of RPSA. Id. at p. 2. RPSA is not registered to do business in Puerto Rico; does not own or lease any real property in Puerto Rico; does not lease or maintain any office in Puerto Rico; has no employees, shareholders, officers, or directors in Puerto Rico; has no bank accounts in Puerto Rico; and has no telephone numbers listed in any directory in Puerto Rico. Id. RPSA does not advertise in Puerto Rico and has never filed a lawsuit in Puerto Rico. Id. at p. 3. RPSA shipped three deliveries of gasoline to Puerto Rico in 2009. Id. at p. 9. These deliveries totaled 772,766 barrels and generated $51,119,439 in gross revenue for RPSA. Id. at pp. 9-10.

RYTTSA is also a Spanish sociedad anonima with its headquarters and principal place of business in Madrid, Spain. (Docket No. 100-1 at p. 2.) Like RPSA, RYTTSA is not registered to do business in Puerto Rico; does not own or lease any real property in Puerto Rico; does not lease or maintain any office in Puerto Rico; has no employees, shareholders, officers, or directors in Puerto Rico; has no bank accounts in Puerto Rico; and has no telephone numbers listed in any directory in Puerto Rico. Id. RYTTSA has never filed a lawsuit in Puerto Rico. Id. at p. 3. Repsol YPF, S.A. owns 98.36% of RYTTSA and RPSA owns 1.64% of RYTTSA. Id. RYTTSA shipped four deliveries of gasoline to Puerto Rico in 2009. Id. at p. 15. These deliveries totaled 847,377

barrels and generated $57,692,228 in gross revenue for RYTTSA.  Id. at pp. 16–18.

Plaintiffs allege that RPSA was the "voyage charterer" of the M/T Cape Bruny at the time of the explosion.  (Docket No. 1 at p. 4.)  Plaintiffs also allege that RYTTSA was acting as RPSA's agent when it chartered the M/T Cape Bruny to deliver unleaded gasoline to Puerto Rico.  Id. at p. 6.  RPSA denies that it was the voyage charterer of the M/T Cape Bruny and asserts that RYTTSA inadvertently used a form contract with RPSA's name on it when negotiating the charter party.[3]  (Docket No. 99-1 at p. 2; Docket No. 137-1 at pp. 5–6.)  RYTTSA also maintains that this was an oversight, and that it corrected the error over the phone while the tanker was en route to San Juan.  (Docket No. 137-10 at pp. 17–18.)  RYTTSA thus admits to being the voyage charterer of the M/T Cape Bruny at the time of the explosion but asserts that it was not involved with the discharge of the unleaded gasoline or the operation of the Gulf Oil Facility.  (Docket No. 100-1 at pp. 4–5.)

The charter party is governed by English Law and required RYTTSA and the owners of the M/T Cape Bruny to submit all disputes to arbitration in London.  (Docket No. 137-29 at p. 2.)  The charter party required RYTTSA to ensure a safe berth for the M/T

---

[3] A charter party is a contract to hire a ship.  Canadian Group Underwriters Ins. Co. v. M/V "Arctic Trader", No. 96 Civ. 9242, 1998 U.S. Dist. LEXIS 16293, 1998 WL 730334, at *4 n.3 (S.D.N.Y. Oct. 14, 1998).

Cape Bruny at port but did not require RYTTSA to warrant the safety of the port.  Id. at p. 3.  None of the owners and operators of the M/T Cape Bruny is a Puerto Rico corporation.  (See Civil No. 09-2092 at Docket No. 83 at pp. 10-12.)

RPSA and RYTTSA both deny owning any of the cargo on the M/T Cape Bruny.  (Docket No. 99-1 at p. 2; Docket No. 100-1 at p. 2.)  RYTTSA purchased the unleaded gasoline that was transported on the M/T Cape Bruny from Petrogal.  (Docket No. 137-10 at p. 14.)  The sale to RYTTSA was FOB (Free on Board) and, therefore, risk of loss passed to RYTTSA when the cargo was loaded onto the M/T Cape Bruny in Sines, Portugal.  Id. at p. 12.  RYTTSA then sold the unleaded gasoline to defendant Astra Oil Trading Limited ("AOT"), a Florida corporation, while the cargo was aboard the M/T Cape Bruny.  (Docket No. 137-10 at p. 13, Docket No. 1 at p. 4.)  The sale to AOT was CFR (Cost and Freight) and RYTTSA agreed to deliver the cargo to the Gulf Oil Facility in San Juan, Puerto Rico as part of the contract.  (Docket No. 137-17 at p. 2.)  CFR means that RYTTSA paid the costs and freight to deliver the cargo to the destination — San Juan — but the title and risk of loss passed to AOT at the loading port — Sines.  (Docket No. 100-1 at p. 4.)

Pursuant to the terms of the contract between RYTTSA and AOT, title to the cargo passed to AOT when RYTTSA accepted AOT's stand by letter of credit.  (Docket No. 137-17 at p. 4.)  The cargo was loaded on the M/T Cape Bruny at Sines before October 17, 2009,

but RYTTSA did not accept AOT's stand by letter of credit until October 20, 2009.  (Docket No. 100-1 at p. 4; Docket No. 137-18 at p. 1.)  The contract between RYTTSA and AOT also provides that "THE LAWS OF THE STATE OF NEW YORK SHALL GOVERN THE CONSTRUCTION, VALIDITY AND PERFORMANCE OF THE AGREEMENT," and the parties will submit all disputes to the exclusive jurisdiction of the New York courts.  Id. at 6.  After the explosion at the Gulf Oil Facility, RYTTSA ordered the M/T Cape Bruny to deliver the remaining cargo to Guayanilla, Puerto Rico at AOT's request.  (Docket No. 137-32 at p. 1-2.)  In March of 2010, more than four months after the explosion, Medco Tankers sent RYTTSA an email informing it that the charterers of the M/T Cape Bruny had assigned the charter party to RYTTSA.  (Docket No. 137-7 at p. 1.)

Plaintiffs allege that RPSA and RYTTSA were negligent in failing to take certain safety measures when offloading the cargo from the M/T Cape Bruny.  (Docket No. 1 at pp. 20-24.)  Plaintiffs also allege that RYTTSA negligently entrusted dangerous cargo to the M/T Cape Bruny and Gulf Oil Facility.  Id. at pp. 24-25.  Plaintiffs also bring claims against all defendants for trespass, nuisance, and failure to respond to an emergency.  Id. at pp. 26-28.

**B.  Procedural History**

Plaintiffs allege that the Court has admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and the Extension of

Admiralty Jurisdiction Act, 46 U.S.C. § 30101. (Docket No. 1 at p. 6.) Plaintiffs also invoke the Court's diversity jurisdiction "because the matter in controversy exceeds the sum or value of [$]75,000.00, exclusive of interests [sic] and costs, and the [p]laintiffs and/or [c]lass [m]embers are citizens of Puerto Rico and the defendants are citizens of different states or subjects of foreign States." Id. at p. 7. Plaintiffs also allege in the complaint that "[t]his Court's exercise of general [personal] jurisdiction is appropriate as to each of the defendants because they either have a principal place of business in Puerto Rico or have substantial or continuous physical contacts with Puerto Rico that approximate physical presence." Id. Plaintiffs subsequently modified their argument and now allege that the Court has specific personal jurisdiction over Repsol as voyage charterer and RYTTSA as Repsol's agent. (Docket No. 139 at p. 9.)

Plaintiffs filed their complaint against Antares Oil Services, LLC; Repsol Petroleo, S.A.; Mapfre; Astra Oil Company, LLC; Astra Oil Trading Limited, NV; Chevron Corporation; Vitol SA, Inc; Intertek Group; Intertek Oil Chemical & Agri; RYTTSA as agents of Repsol Petroleo, S.A.; and Repsol YPF Group. (Docket No. 1.) Plaintiffs allege that all defendants were negligent in causing the October 23, 2009 explosion at the Gulf Oil Facility. Id. at pp. 16-19. Plaintiffs also allege that defendants RYTTSA and RPSA are liable (1) for transporting and delivering hazardous cargo and

(2) for "things under [their] control." Id. at pp. 19-24.
Plaintiffs also bring claims for negligent entrustment of hazardous
cargo, trespass, nuisance, failure to respond to an emergency, and
res ipsa loquitur, as well as claims pursuant to article 1802 of
the Puerto Rico Civil Code and P.R. Laws Ann. tit. 26 § 2001. Id.
at pp. 24-31. Defendants answered the complaint. (Docket
No. 42-45.)

On August 12, 2010, Caribbean Petroleum Corporation and
Caribbean Petroleum Refining LP, defendants in a related case,
filed voluntary petitions for bankruptcy pursuant to Chapter 11 of
the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq.
(Docket No. 70 at p. 1.) Finding unusual circumstances that would
affect the bankruptcy debtors' ability to complete their
reorganization, the Court extended the automatic stay to all
defendants in the related case and this case. (Docket No. 172.)
On February 8, 2013, the bankruptcy court approved a stipulation
between the debtors, RPSA, and RYTTSA to lift the stay partially as
to RPSA and RYTTSA. (Docket No. 178-1 at pp. 1-2.) RPSA and
RYTTSA then moved to lift the stay partially in this Court so that
the Court could rule on their motions to dismiss. (Docket
No. 173.) On February 22, 2013, the Court granted the motion and
partially lifted the stay in order to decide RPSA and RYTTSA's
motions to dismiss for lack of personal jurisdiction and failure to
state a claim. (Docket No. 178.) Intertek requested to join

RPSA's motion to dismiss for failure to state a claim.  (Docket No. 101.)  The Court granted Intertek's motion.  (Docket No. 102.)  Plaintiffs subsequently opposed RPSA and RYTSSA's motions to dismiss.  (Docket No. 139.)  Defendants replied.  (Docket No. 158; Docket No. 159.)

## II.  LEGAL STANDARD

When a party submits "matters outside the pleading" in support of its motion to dismiss, the Court has the option of treating the motion to dismiss as a motion for summary judgment.  <u>Rodriguez v. Fullerton Tires Corp.</u>, 115 F.3d 81, 83 (1st Cir. 1997) (citing Fed. R. Civ. P. 12(d)).  "All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  RPSA and RYTTSA each submitted an affidavit in support of their motion to dismiss.  (Docket No. 99-1; Docket No. 100-1.)  Plaintiffs submitted 32 exhibits in opposition to RPSA and RYTTSA's motion to dismiss.  (Docket No. 137-1–137-32.)  Given that the movants and nonmovants have both submitted materials outside the pleadings in support of their positions, the Court will treat the motions to dismiss as motions for summary judgment.

The Court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

Under the summary judgment standard, the Court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. <u>Id</u>. at 255.  The Court does not make credibility determinations or weigh the evidence.  <u>Id.</u>  Rather, the Court "ascertains only whether the facts duly proffered, [and] fully credited, support the exercise of personal jurisdiction." <u>Rodriguez</u>, 115 F.3d at 84.[4] Summary judgment may be appropriate, however, if the non-moving party's case "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." <u>Forestier Fradera v. Municipality of Mayagüez</u>, 440 F.3d 17, 21 (1st Cir. 2006) (citations omitted) (internal quotation marks omitted).  When a defendant disputes the Court's personal jurisdiction, "the plaintiff bears the burden of proving that jurisdiction lies in the forum state." <u>Sawtelle v. Farrell</u>, 70 F.3d 1381, 1387 (1st Cir. 1995).

---

[4] The Court admonishes plaintiffs to take heed that "'*[s]upra*' and '*hereinafter*' should not be used to refer to cases . . . . Appropriate short forms for cases, statutes, and legislative materials . . . are provided in their respective rules." <u>The Bluebook:  A Uniform System of Citation</u> R. 4.2, at 50 (Columbia Law Review Ass'n. et al. Eds., 19th ed. 2010).

III. DISCUSSION

    A.    **Personal Jurisdiction**

        Plaintiffs allege in the complaint that "[t]his Court's exercise of general [personal] jurisdiction is appropriate as to each of the defendants because they either have a principal place of business in Puerto Rico or have substantial or continuous physical contacts with Puerto Rico that approximate physical presence." Id. Plaintiffs subsequently modified their argument and now allege that the Court has specific personal jurisdiction over Repsol as voyage charterer and RYTTSA as Repsol's agent. (Docket No. 139 at p. 9.) RPSA argues that it was not the voyage charterer, but even if it were the voyage charterer it did not purposefully avail itself of the privilege of conducting business in Puerto Rico and subjecting RPSA to the personal jurisdiction of this Court does not comport with "fair play and substantial justice." (Docket No. 99 at pp. 9-15.) RYTTSA echoes RPSA's argument that it has not purposefully availed itself of the privilege of conducting business in Puerto Rico and subjecting RYTTSA to the personal jurisdiction of this Court does not comport with "fair play and substantial justice." (Docket No. 100 at pp. 10-18.) As discussed below, the Court finds that neither RPSA nor RYTTSA has established minimum contacts with Puerto Rico. Accordingly, it lacks personal jurisdiction over RPSA and RYTTSA, and the case against both of them must be dismissed.

### 1.   Standard for Specific Personal Jurisdiction

A court may exercise specific personal jurisdiction over a defendant when the forum state has a long-arm statute that authorizes jurisdiction over the defendant and the defendant "has certain minimum contacts with [the forum] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l. Shoe Co. v. Wash., 326 U.S. 310, 316 (1945) (citations omitted) (internal quotation marks omitted). Puerto Rico's long-arm statute provides personal jurisdiction "to the full extent of constitutional authority," and, therefore, the Court proceeds to the due process analysis. Dalmau Rodriguez v. Hughes Aircraft Co., 781 F.2d 9, 12 (1st Cir. 1986) (citing A.H. Thomas Co. v. Super. Ct. of Puerto Rico, 98 P.R.R. 864, 870 n.5 (1970)).

"Like any standard that requires a determination of 'reasonableness,' the 'minimum contacts' test of International Shoe is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." Kulko v. Super. Ct. of Cal., 436 U.S. 84, 92 (1978) (citing Hanson v. Denckla, 357 U.S. 235, 246 (1958)).

> The Court long ago rejected the notion that personal jurisdiction might turn on "mechanical" tests or on "conceptualistic . . . theories of the place of contracting or of performance." Instead, we have emphasized the need for a "highly realistic" approach that recognizes that a "contract" is "ordinarily but an

intermediate step serving to tie up prior business
negotiations with future consequences which themselves
are the real object of the business transaction." It is
these factors—prior negotiations and contemplated future
consequences, along with the terms of the contract and
the parties' actual course of dealing—that must be
evaluated in determining whether the defendant
purposefully established minimum contacts with the forum.

Burger King Corp. v. Rudzewicz, 471 U.S. at 478–79) (internal

citations omitted).

        The First Circuit Court of Appeals conducts a three-

part minimum contacts analysis:

    First, the claim underlying the litigation must directly
    arise out of, or relate to, the defendant's forum-state
    activities.  Second, the defendant's in-state contacts
    must represent a purposeful availment of the privilege of
    conducting activities in the forum state, thereby
    invoking the benefits and protections of that state's
    laws and making the defendant's involuntary presence
    before the state's courts foreseeable.  Third, the
    exercise of jurisdiction must, in light of the Gestalt
    factors, be reasonable.

United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant Street

Corp., 960 F.2d 1080, 1089 (1st Cir. 1992).  The Gestalt[5] factors

are "the burden on the defendant, the forum State's interest in

adjudicating the dispute, the plaintiff's interest in obtaining

convenient and effective relief, the interstate judicial system's

interest in obtaining the most efficient resolution of

controversies, and the shared interest of the several States in

furthering fundamental substantive social policies." Burger King

_____

        [5] Prior cases indicate that the First Circuit Court of Appeals
refers to the factors enumerated in Burger King as the "Gestalt
factors."

Corp., 471 U.S. at 477 (citations omitted) (internal quotation
marks omitted).  "[T]he reasonableness prong of the due process
inquiry evokes a sliding scale: the weaker the plaintiff's showing
on the first two prongs (relatedness and purposeful availment), the
less a defendant need show in terms of unreasonableness to defeat
jurisdiction." Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 210
(1st Cir. 1994).  "Absent proof of the necessary minimum contacts,
we need not address the question of reasonableness.  The Gestalt
factors come into play only if the first two segments of the test
for specific jurisdiction have been fulfilled."  163 Pleasant
Street Corp., 960 F.2d at 1091 n.11.

    **2.  Analysis**

        Based on the facts supported by the record, the
Court is unable to find that plaintiffs' claims arise out of
defendant RPSA or RYTTSA's contacts with Puerto Rico, or that
either of the defendants purposefully availed itself of the
privilege of conducting business in Puerto Rico.  First,
defendants' only contacts with the forum of Puerto Rico consist of
sporadic shipments to Puerto Rico pursuant to contracts that call
for delivery in San Juan.  Although RPSA and RYTTSA contracted to
deliver unleaded gasoline in San Juan, there is no allegation that

they breached this duty.  Defendants were the "voyage charterer"[6]
of the M/T Cape Bruny for the delivery in question, meaning that
they only hired the vessel to carry the cargo; the owner's master
and crew operated the vessel.[7]   (Docket No. 1 at pp. 4, 6;)
Canadian Group Underwriters Ins. Co., 1998 WL 730334, at *4 n.3.
As voyage charterer, defendants also had a contractual obligation
to provide a safe berth for the M/T Cape Bruny in San Juan pursuant
to the charter party.   Plaintiffs were not parties to these
contracts, however, and their claims do not arise out of a breach
of contract.   Other than the provision of the sales agreement
requiring delivery in San Juan, the contracts are wholly unrelated
to Puerto Rico.

          Plaintiffs argue that RYTTSA breached its duty to
provide a safe berth for the M/T Cape Bruny.  The safe berth clause
in the charter party, however, only requires that RYTTSA ensure

---

[6] "Three principal types of charter parties exist: (1) a time-
charter party in which the charterer engages a vessel, manned and
navigated by the vessel owner, for a fixed period of time to carry
cargo where the charterer instructs, (2) a voyage-charter party in
which the charterer engages the vessel to carry goods for a single
voyage, and (3) a demise or bareboat charter party in which the
charterer takes complete control of the vessel and is treated as
the legal owner."  Canadian Group Underwriters Ins. Co., 1998 WL
730334, at *4 n.3.

[7] The parties dispute whether RYTTSA chartered the M/T Cape
Bruny for itself or as agent to RPSA.   Even assuming in its
analysis that RYTTSA acted as agent to RPSA when it chartered the
M/T Cape Bruny or that they both were voyage charterers, this
dispute is immaterial, because neither RPSA nor RYTTSA has
established minimum contacts with Puerto Rico.

that the M/T Cape Bruny could "always lie safely afloat at such port."   There is no support in the record for plaintiffs' allegation that RYTTSA breached this duty.   Plaintiffs have not alleged that the M/V Cape Bruny ran aground.   Rather, they allege that the operators of the M/T Cape Bruny and Gulf Oil Facility negligently caused a fire and explosion by overfilling the storage tanks with unleaded gasoline, thereby causing property damage and personal injuries in Puerto Rico.   Plaintiffs' claims do not arise out of RYTTSA's alleged breach of its duty to provide a safe berth for the vessel, and thus do not support a finding of personal jurisdiction over the defendants under the first element of the First Circuit Court of Appeals' test.

        Second, the contracts do not demonstrate that defendants RPSA and RYTTSA purposefully availed themselves of the privilege of conducting business in Puerto Rico; these contacts are best characterized as AOT's unilateral action rather than defendants' purposeful availment of the privilege of conducting business in Puerto Rico. See Thypin Steel Co., Inc. v. M/V Mikhail Strekalovskiy, No. Civ. A. 96-1799, 1997 WL 169437, at *4 (E.D.P.A. Apr. 3, 1997) (finding a voyage charterer was not subject to personal jurisdiction in the forum because chartering a vessel to deliver goods in the forum at the purchaser's request is the unilateral action of the purchaser).   The charter party did not reference Puerto Rico at all.   Neither the contract for sale of the

unleaded gasoline nor the charter party were negotiated in Puerto
Rico or entered into with Puerto Rico corporations.  Pursuant to
the terms of the sales contract, the law of New York governed the
contract, and the parties had to submit all disputes to the
exclusive jurisdiction of the courts of New York.  The parties to
the charter party were required to submit all disputes to
arbitration in London, England and English law governed the charter
party.

          Plaintiffs' choice of precedent does also not
support a finding of personal jurisdiction over defendants RPSA and
RYTTSA.  First, plaintiffs cite cases holding that defendants who
do not directly control the vessel's destination do not fall within
the personal jurisdiction of the forum court.  Plaintiffs
mischaracterize these cases, however, as holding "that defendants
with direct control over the destination of a vessel are subject to
the courts' jurisdiction."  (Docket No. 139 at p. 14.)  Finding
that defendants *without* control *are* *not* subject to the court's
jurisdiction and finding that defendants *with* control *are* subject
to the court's jurisdiction are not the same.  Control over the

vessel's destination is just one fact to be analyzed in light of all of the specific facts in each case.[8]

Second, many of the cases that plaintiffs cite involve claims arising out of damaged or lost cargo and are brought by parties to the contracts that required delivery in the forum.

_____

[8] See Francosteel Corp. v. M/V Charm, 19 F.3d 624, 626 (11th Cir. 1994) (finding no personal jurisdiction over the owner and manager of a vessel in an action by a voyage charterer and purchaser for lost cargo); W. Africa Trading & Shipping Co. v. London Int'l Grp., 968 F. Supp. 996, 1001 (D.N.J. 1997) (involving a claim for cargo lost when a vessel sank and granting plaintiff's request for jurisdictional discovery, but not deciding the issue of minimum contacts); Thypin Steel Co., Inc., 1997 WL 169437, at *3-4 (involving a claim for damaged cargo and finding no personal jurisdiction over the voyage charterer who chartered a vessel to deliver goods in the forum state at plaintiff buyer's request); In re Matter of Libel and Petition of Gemini Navigation, S.A., Civ. A. G-92-126, 1996 WL 544236, at *2,*4 (S.D. Tex. Mar. 1, 1996) (finding personal jurisdiction over a defendant that manned ships owned by the defendant's shareholders to fulfill the defendant's contractual obligations prior to allision between defendant's vessel and plaintiff's oil rig in forum); Farris v. United States, 877 F. Supp. 1549, 1554-55 (M.D. Fl. July 15, 1994) (finding that a plaintiff's personal injury claim did not arise out of the defendant's forum state contacts and defendant was not subject to general personal jurisdiction in the forum); Conner v. Bouchard Transp. Co, Inc., No. 93-450, 1993 WL 388274, at *2 (E.D. Pa. Sept. 30, 1993) (finding that a defendant was not subject to general jurisdiction in the forum); Asarco, Inc. v. Glenara, Ltd., 912 F.2d 784, 786 (5th Cir. 1990) (involving a claim for lost cargo and finding insufficient evidence that the defendant vessel owner and manager had actually contracted to deliver goods in the forum at all); Nicolaisen v. Toei Shipping Co., Ltd., 722 F. Supp. 1162, 1165 (D.N.J. 1989) (finding a lack of general jurisdiction over a defendant shipowner in a personal injury case); Uni-Petrol Gesellschaft Fur Mineraloel Produckte, M.B.H. v. M/T Lotus Maru, 607 F. Supp. 108, 110-11 (S.D.N.Y. 1985) (finding no minimum contacts and claim for lost cargo did not arise out of the defendant's contacts with a forum where plaintiff was not a party to charter parties and plaintiff did not allege that damages arose from breach of charter parties).

Plaintiffs in this case are not parties to the contract that required RYTTSA to deliver cargo to San Juan, and this case does not arise out of RYTTSA's breach of contractual obligations to be performed in San Juan or damage to the cargo delivered to San Juan.

Plaintiffs assert that this case is similar to Kanematsu (USA), Inc. v. M/V Hua Guang, No. 95-2504, 1996 WL 764106 (E.D. La. Aug. 15, 1996), where the district court found that it had personal jurisdiction over the charterers.  The Court finds Kanematsu similarly inapposite to this case.  In Kanematsu, the owner of the M/V Hua Guang time chartered the vessel to a Panamanian corporation, who then subchartered it to Showa Line Ltd. Id. at *1.  Showa then subchartered the vessel to Toko Line Ltd. Id.  A provision of the charter party provided that the "Master will authorize Charterers or their agents to sign Bills of Lading on his behalf provided the Bills are made up in accordance with mate's and tally clerk's receipts."  Id. at *1-2.  Kanematsu filed suit in Louisiana, alleging that a fire caused by "the owner's design and neglect, the vessel's unseaworthiness, and the defendants' fault, neglect, lack of due diligence, and want of care for the cargo" damaged the steel rods delivered to Kanematsu in Louisiana.  Id. at *1.  The court determined, based on the provision allowing the charterer to sign bills of lading, that the charterer had purposefully availed itself of the privilege of

conducting business in Louisiana.  Id. at *2.  In analyzing the
defendants' contacts with the forum, the court noted:

> "The charter parties gave the shipping lines the actual
> authority to issue bills of lading in the name of the
> Master. By virtue of the charter parties and the bill of
> lading, Parakou, S.A. and Max Victory were parties to a
> contract to deliver a cargo to New Orleans.  The vessel
> with which they were associated made use of the Port of
> New Orleans, and *there discharged the cargo which is at
> the core of this litigation*.  The Court finds that these
> substantial, purposeful contacts with Louisiana support
> specific jurisdiction over Parakou, S.A. and Max
> Victory."

Id. at *2 (emphasis added).

        The Court has studied the charter party in this case
and has found no similar provision granting RYTTSA and RPSA the
authority to issue bills of lading, which undermines plaintiffs'
argument that defendants purposefully availed themselves of the
privilege of conducting business in Puerto Rico simply by
contracting to deliver cargo in San Juan.  (Docket No. 137-29.)
The absence of this provision, moreover, has little impact because,
as previously discussed, this case does not arise out of a breach
of the charter party.  Therefore, plaintiffs' claims do not arise
out of RPSA and RYTTSA's contacts with the forum and plaintiffs
have failed to satisfy the first two elements of the First Circuit
Court of Appeals test.

        Third, plaintiffs rely on a case where the voyage
charterer was a plaintiff, which does not necessarily show that

personal jurisdiction attaches over voyage charterer defendants. Plaintiffs' reference to <u>Francosteel</u> is also not suitable in this case.  In <u>Francosteel</u>, Unimetal was the party whose role most closely resembled the role that RPSA and RYTTSA allegedly played in this case.  Unimetal was a *plaintiff* in that case, however, and, therefore, the Eleventh Circuit Court of Appeals did not analyze whether the district court could exercise personal jurisdiction over Unimetal consistent with Due Process.  Deciding that the defendants had not established minimum contacts with the forum because the plaintiff had chartered the vessel to go to the forum does not necessarily lead to the conclusion that any defendant who has chartered a vessel to go to the forum has established minimum contacts.  The Court must still employ a fact-specific analysis of the contacts in each case.  In view of the Supreme Court's "highly realistic" analysis in <u>Burger King</u>, the Court holds that RPSA and RYTTSA have not established minimum contacts with Puerto Rico.

Because it finds that plaintiffs' claims do not arise out of defendants RPSA and RYTTSA's contacts with Puerto Rico, and that RPSA and RYTTSA have not purposefully availed themselves of the privilege of conducting business in Puerto Rico, the Court **GRANTS** RPSA and RYTTSA's motions to dismiss for lack of

personal jurisdiction without proceeding to the Gestalt factors.[9]
See 163 Pleasant Street Corp., 960 F.2d at 1091 n.11 (finding that
the forum lacked personal jurisdiction without proceeding to the
Gestalt factors).

### B.   Admiralty Jurisdiction

Plaintiffs allege that even if defendants RPSA and RYTTSA
have not established minimum contacts with Puerto Rico, the Court
may still exercise personal jurisdiction pursuant to Fed. R. Civ.
P. 4(k)(2).  (Docket No. 139 at pp. 17-18.)  This rule allows the
Court to exercise personal jurisdiction over defendants who have
established minimum contacts with the United States but not with
any one State in particular if the claim arises from federal law.
Plaintiffs allege that Fed. R. Civ. P. 4(k)(2) applies to this case
because "[p]laintiffs have alleged maritime claims."  (Docket
No. 139 at p. 17.)  The Court disagrees.  "The mere fact that a
ship is involved will not bring the cause within the jurisdiction
of the admiralty court."  Richard Bertram & Co. v. The Yacht Wanda,
447 F.2d 966, 967-68 (5th Cir. 1971).  Plaintiffs' causes of action
against RPSA and RYTTSA are for negligence on the part of the
operators of the Gulf Oil Facility, "liability for things under
one's control," liability for dangerous cargo, negligent

---

[9] Because the Court has found that it does not have personal
jurisdiction over these defendants, it will not address RPSA and
RYTTSA's motions to dismiss for failure to state a plausible claim
or preemption.

entrustment, trespass, nuisance, failure to respond to an emergency, *res ipsa loquitur*, and liability pursuant to article 1802 of the Civil Code.  (Docket No. 1 at pp. 20, 24, 26-29.)  These are not maritime claims; rather, they are claims sounding in tort, brought pursuant to state law. Accordingly, Fed. R. Civ. P. 4(k)(2) does not apply, and the Court will not grant jurisdiction over plaintiffs' claims against defendants RPSA and RYTTSA.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants RPSA's and RYTTSA's motions to dismiss for lack of personal jurisdiction.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, July 18, 2013.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE